# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| PAMELA VANGEL | : | |
| | : | |
| v. | : | C.A. No. 11-110ML |
| | : | |
| MICHAEL J. ASTRUE | : | |
| Commissioner of the Social Security | : | |
| Administration | : | |

# REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff filed her Complaint on March 16, 2011 seeking to reverse the decision of the Commissioner. On August 31, 2011, Plaintiff filed a Motion for Reversal of the Disability Determination of the Commissioner of Social Security. (Document No. 7). On October 14, 2011, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner. (Document No. 9)

This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. Based upon my review of the record, the parties' submissions and independent legal research, I find that there is not substantial evidence in this record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, I recommend that the Commissioner's Motion for an Order Affirming the

Decision of the Commissioner (Document No. 9) be DENIED and that Plaintiff's Motion for Reversal of the Disability Determination of the Commissioner of Social Security (Document No. 7) be GRANTED.

## I. PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on September 7, 2007 alleging disability since October 1, 2006. (Tr. 91-100). The applications were denied initially on January 8, 2008. (Tr. 52-58). Plaintiff filed a request for review on January 31, 2008. (Tr. 61). The review was denied on October 22, 2008. (Tr. 45-51). On March 24, 2010, Administrative Law Judge Hugh Atkins (the "ALJ") held a hearing at which Plaintiff, represented by counsel and a vocational expert ("VE") appeared and testified. (Tr. 17-42). The ALJ issued a decision unfavorable to Plaintiff on September 16, 2010. (Tr. 4-16). The Appeals Council did not complete its review of the claim during the time allowed, therefore the ALJ's decision became final. (Tr. 1-3). A timely appeal was then filed with this Court.

## II. THE PARTIES' POSITIONS

Plaintiff argues that the ALJ erred by applying the Grids to decide Plaintiff's claim and did not properly evaluate her non-exertional impairments.

The Commissioner disputes Plaintiff's claims and asserts that the ALJ's RFC assessment adequately accounts for Plaintiff's exertional and nonexertional impairments and thus is supported by substantial evidence.

## III. THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than

merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant

to the disability claim.  Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision.  Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council).  After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction.  Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level.  See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant.  Id.  With a sentence six remand, the parties must return to the court after remand to file modified findings of fact.  Id.  The

court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  Id.

## IV.     THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.      Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a

treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R § 404.1527(d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner.  20 C.F.R. § 404.1527(e).  See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

### B.      Developing the Record

The ALJ has a duty to fully and fairly develop the record.    Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained.  See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987).  The obligation to fully and fairly develop the record exists

if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  Id.  However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D.    The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work)

prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(f).  Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five.  Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B).  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act.  Seavey, 276 F.3d at 5.  The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits.  Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c).  If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability.  Id.

###   E.    Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  Seavey, 276 F.3d at 5.  In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant.  Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through

exclusive reliance on the Medical-Vocational Guidelines (the "grids"). <u>Seavey</u>, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. <u>Id.</u>; <u>see also</u> <u>Heckler v. Campbell</u>, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. <u>Nguyen</u>, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. <u>Heggarty</u>, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. <u>See</u> <u>Ferguson v. Schweiker</u>, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1. Pain

"Pain can constitute a significant non-exertional impairment." <u>Nguyen</u>, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including

pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

(1)     The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

(2)     Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

(3)     Type, dosage, effectiveness, and adverse side-effects of any pain medication;

(4)     Treatment, other than medication, for relief of pain;

(5)     Functional restrictions; and

(6)     The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

**2.     Credibility**

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V.      APPLICATION AND ANALYSIS

Plaintiff was forty-nine years old on the date of the ALJ's decision. (Tr. 91). Plaintiff graduated from college with a degree in architectural engineering and worked for several years as a structural engineer. (Tr. 22, 128, 262). She subsequently worked in the relevant past as a cashier, housekeeper, machine operator, nurses aid, telemarketer and waitress. (Tr. 131). Plaintiff's date last insured for DIB is March 31, 2009. (Tr. 139). Plaintiff alleges disability due to back pain, neck pain, hand and wrist pain, depression, anxiety and mental disorder. (Tr. 20, 143).

Plaintiff reportedly slipped a disc in her lumbar spine while working a "side job" as a housekeeper in 1980 while in school. (Tr. 181, 214, 216). At the time, her condition was treated with bed rest and pain medications, but she stated that her symptoms progressed and worsened over the years. (Tr. 216). At a consultative examination with Dr. Kenneth Morrissey in November 2007, Plaintiff indicated that she experienced neck pain that radiated into her shoulder blades, and lower lumbar pain that radiated to her buttocks and down her legs, right greater than left, but she was not actively undergoing treatment. (Tr. 181). Examination of her cervical spine revealed a flexible spine with no spasm, and she was able to rotate her head right and left and put her chin to her chest. (Tr. 182). Upper extremity strength and reflexes were normal. Id. Examination of the lower lumbar area

revealed no spasm and normal lumbar lordosis. Id. Plaintiff demonstrated a normal heel and toe gait pattern, and she could walk on her heels and toes without difficulty. Id. Straight leg raising was positive in the supine position, but was negative while seated. Id. Reflexes, sensation, and strength of the lower extremities were normal, and x-rays of the cervical and lumbosacral spine were normal. Id. Dr. Morrissey assessed Plaintiff with chronic neck and back pain, but he noted that there were no neurological findings on examination. Id. He added that Plaintiff did not present with an antalgic gait, there was no measurable atrophy, and she did not require an assistive device to walk. Id.

Plaintiff presented to Thundermist Health Center in February 2008 as a new patient. (Tr. 191). She complained of left arm and lower back pain, she was diagnosed with major depressive disorder and back pain, and she was prescribed an anti-depressant and Tylenol. (Tr. 192). The following month, Plaintiff reported pain and numbness in the right arm. (Tr. 189). She continued to complain of back pain, for which she took Vicodin. (Tr. 190). Plaintiff's right wrist had a positive Tinel's sign, and Plaintiff was diagnosed with right carpal tunnel syndrome. Id. She was advised to use a wrist splint and to take Tylenol or Advil. Id. She was also diagnosed with anxiety/depression, and prescribed anti-depressant medications. Id. At a follow-up appointment in April 2008, Plaintiff stated that she experienced constant lower back and cervical spine pain, which radiated into her wrist. (Tr. 185). On examination, Plaintiff complained of cervical spine pain with rotation of the head to the right, and positive Tinel's sign was present in the right wrist. (Tr. 186). Plaintiff was diagnosed with right carpal tunnel syndrome. Id. She advised that wearing the splint helped, though she was not taking Advil. Id. Her Vicodin prescription was decreased. Id.

Plaintiff received intermittent treatment for back and neck pain and depression from Thundermist Health Center in 2009. (Tr. 224-259). In July 2009, Plaintiff complained of right-sided

neck and shoulder pain as well as depression. (Tr. 243). Although Plaintiff complained of neck pain with movement, she was able to move in all directions. Id. She presented as agitated with a flat affect. Id. She was diagnosed with menopausal disorder; major depressive disorder, single episode, moderate; and shoulder bursitis/tendonitis. (Tr. 244). She was advised to increase her anti-depressant medication and to continue using Naprosyn and Vicodin for pain. Id.

On August 31, 2009, Plaintiff reported that she was taking Naprosyn and Vicodin with good relief. (Tr. 240). In October 2009, Plaintiff stated that she had lower back pain that radiated to her legs, left greater than right, with some mild numbness in the right leg. (Tr. 232). Examination revealed positive straight leg raising, pain with palpation to the lower lumbar area, and limited range of motion due to pain. Id. Her affect was flat, and she was observed to be depressed and crying. Id. Plaintiff was advised to continue with her anti-depressant and her pain medications. (Tr. 233).

At an appointment in November 2009, Plaintiff relayed that she was using a cane when walking, which helped with her back pain. (Tr. 226). She stated that she was experiencing good relief of her depressive symptoms with medication. Id. Plaintiff complained of pain with palpation of the lower lumbar region, right greater than left, and psychological examination showed Plaintiff's judgment was intact and she was oriented in three spheres. Id. Plaintiff was instructed to continue taking Vicodin and Naprosyn for pain, and her anti-depressant. (Tr. 226-227). Plaintiff telephoned Thundermist Health Center in December 2009 for a refill of her Vicodin, but her request was refused because she tested positive for cocaine. (Tr. 224-225, 246-247).

Plaintiff received physical therapy for her back and leg pain beginning in October 2009. (Tr. 213-218). She presented for five therapy sessions, and she was discharged from therapy on December 15, 2009, due to non-compliance. (Tr. 218-221, 265-266). Plaintiff was referred for physical therapy

again in February 2010. (Tr. 269). At her initial evaluation, Plaintiff stated that she sought treatment for pain in her right arm, right leg and back. (Tr. 271-272). After three sessions, Plaintiff informed that she felt better, and she was pleased with her progress, though she still complained of neck pain. (Tr. 278).

At the request of Plaintiff's counsel, Dr. James Sullivan conducted a psychiatric evaluation of Plaintiff and prepared a report dated April 19, 2008. (Tr. 195-200). Dr. Sullivan wrote that Plaintiff described and demonstrated symptoms consistent with major depression and a generalized anxiety disorder, and he noted that Plaintiff's symptoms were treated by her primary care physician with an anti-depressant. (Tr. 195-196). Plaintiff related the onset of her depression to the death of her fiancé in 1990, and Dr. Sullivan remarked that Plaintiff became tearful when describing her current inability to work. (Tr. 196-197). Plaintiff denied any past or current history of drug or alcohol abuse or dependency. (Tr. 197).

On examination, Dr. Sullivan observed that Plaintiff was clean though disheveled, and she appeared anxious and depressed. (Tr. 197). Her speech became pressured and tangential when discussing her financial worries and "social isolation." Id. Her memory and cognition were grossly intact, and Dr. Sullivan noted that there was no overt evidence of psychosis, though Plaintiff was very socially isolative. Id. Dr. Sullivan recorded Plaintiff's reports of difficulty sleeping, decreased appetite, low self-esteem, and feelings of hopelessness, helplessness, and uncertainty. Id. Dr. Sullivan diagnosed major depression, recurrent, severe; and generalized anxiety disorder, moderate to severe. Id. He assigned a Global Assessment of Functioning ("GAF") score of 46, which corresponds to serious symptoms. Id. Dr. Sullivan concluded that Plaintiff's depression and chronic pain symptoms persisted to a disabling degree. (Tr. 198).

Dr. Sullivan completed a "Questionnaire As To Residual Functional Capacity" on April 19, 2008. (Tr. 199-200). Dr. Sullivan posited that Plaintiff's degree of deterioration in maintaining her personal habits was mild, and she had a mild limitation in performing simple tasks. Id. She was moderately limited in her abilities to respond appropriately to supervision and to coworkers. (Tr. 199). Dr. Sullivan opined that Plaintiff had moderately severe limitations in the following areas: relating to other people; participating in daily activities; constriction of interests; understanding, remembering, and carrying out instructions; responding to customary work pressures; performing complex tasks; performing varied tasks; and, performing repetitive tasks. (Tr. 199-200). He suggested that Plaintiff's impairments existed at this level of severity since November 2006. (Tr. 200).

Dr. Sullivan conducted a second psychiatric evaluation of Plaintiff, again at the request of Plaintiff's counsel, and completed a report dated March 11, 2010. (Tr. 260-264). Dr. Sullivan wrote that Plaintiff described and demonstrated symptoms consistent with major depression, and endorsed symptoms consistent with a generalized anxiety disorder, conditions for which she received medication from her primary care physician. (Tr. 260-261). Plaintiff reported pain in the right side of her neck, shoulder, and arm, as well as pain in her back, hip, and leg, and stated that she was prescribed Naprosyn, explaining that she was no longer prescribed Vicodin due to testing positive for cocaine. (Tr. 262). She stated that she started drinking alcohol, and used cocaine rarely and intermittently. Id.

Dr. Sullivan, on mental status examination, observed that Plaintiff was disheveled and unclean in her body and clothing, with a significant smell of cigarette smoke. (Tr. 263). Plaintiff's speech was tangential and somewhat pressured and became loud at times, and her affect was disconnected.

Id. Her mood was depressed, and she became tearful when discussing her feelings of low self-esteem, low self-worth, fears for her future, hopelessness, and helplessness. Id. Plaintiff's memory and cognition were grossly intact for current events. Id. Dr. Sullivan memorialized Plaintiff's reports of difficulty sleeping, variable appetite, low self-esteem, loss of pride, inability to engage in daily activities, easy distractability, poor concentration and poor task initiation, persistence, and completion. Id. Dr. Sullivan diagnosed major depressive disorder, recurrent, severe; and generalized anxiety disorder, moderate to severe, and assigned a GAF score of 42, which is indicative of serious symptoms. Id. Dr. Sullivan concluded that Plaintiff's symptoms of depression and anxiety had progressed in frequency and intensity since his prior evaluation in 2008. (Tr. 264).

In May 2010, Plaintiff was referred by State Disability Determination Services for a consultative examination with Dr. Louis Turchetta, a Psychologist. (Tr. 282). Plaintiff told Dr. Turchetta that her depressive symptoms began in 1990 when her fiancé died, and her symptoms worsened in 2006 when her back pain became more prominent. (Tr. 283). She stated that she felt helpless due to her decreased daily functioning, she was chronically fatigued, she lost interest in all activities, and she felt anxious. Id. Plaintiff told Dr. Turchetta that she abused cocaine and alcohol for many years, and that she drank excessive amounts of alcohol regularly. Id. She stated that she could not wait to get home from the appointment and have a drink, and she informed that she was arrested five times for driving while intoxicated. Id. As to her cocaine use, Plaintiff advised that she used cocaine whenever she had access to it, which was usually four times per month. Id. Plaintiff stated that her inability to work initially was due to her back problems, but was now due to her mental health issues. (Tr. 283-284). Dr. Turchetta noted on mental status examination that Plaintiff's personal hygiene was poor, she was able to maintain eye contact, and rapport was easily established.

(Tr. 283). Plaintiff's thought processes were abstract, and she had difficulty maintaining attention and concentration. Id. Dr. Turchetta remarked that Plaintiff continually needed to be refocused, and she appeared to perseverate over her desire to return home to drink alcohol. Id. She was oriented in three spheres, but her comprehension and judgment of social situations seemed poor. Id. Plaintiff was able to recall the names of three of the last presidents, though she was asked to provide nine, and she named three states that began with the letter M, though she was asked for five. (Tr. 284). She could repeat a series of three numbers forward and two in reverse, and she was able to recall a simple sentence. Id. Dr. Turchetta diagnosed alcohol dependence; major depressive disorder, moderate; cocaine dependence, and he assessed a GAF score of 48, which indicates serious symptoms. Id. Dr. Turchetta explained that his impressions were based solely on Plaintiff's description of her life history, a clinical interview, and a report from Dr. Sullivan, and he advised that his report "would best be integrated with other available evidence." (Tr. 284).

## A. The ALJ's Decision

The ALJ decided this case adverse to Plaintiff at Step 5. (Tr. 14-15). At Step 2, the ALJ found that Plaintiff's chronic back and neck pain, polysubstance abuse, depression and anxiety, were all "severe" impairments as defined in 20 C.F.R. §§ 404.1520(c) and 416.920(c). (Tr. 10). However, at Step 3, the ALJ concluded that Plaintiff's impairments, either singly or in combination, did not meet or medically equal any of the disability Listings. (Tr. 10-11). As to RFC, the ALJ determined that Plaintiff was able to perform sedentary work with certain postural and environmental limitations. (Tr. 11). The ALJ also determined that Plaintiff was able to understand, carry out and remember simple instructions, to respond appropriately to supervision, coworkers and usual work situations; and to deal with changes in a routine work setting. Id. Based on this RFC and the application of the

Grids, the ALJ found that Plaintiff was not precluded from performing unskilled sedentary work and thus was not disabled within the meaning of the Social Security Act.

**B.    The ALJ's Non-disability Finding is Not Supported by Substantial Evidence**

Plaintiff raises several challenges to the ALJ's evaluation of her disability claim and the development of the record.  In response, Defendant disputes any error and contends that "the ALJ made a common sense judgment based on the medical findings and other record evidence when he found that Plaintiff retained the capacity to understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and usual work situations; and, deal with changes in a routine work setting."  (Document No. 9 at p. 16).  While common sense, of course, should play a role, it cannot act as a substitute for a fully developed record.  See Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 17 (1st Cir. 1996) ("where the medical evidence shows relatively little [ ] impairment, an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment...[b]ut when...a claimant has sufficiently put her functional inability to perform her prior work in issue, the ALJ must measure the claimant's capabilities, and to make that measurement, an expert's RFC evaluation is ordinarily essential...").

Here, Plaintiff's initial application claimed disability solely due to "chronic back pain."  (Tr. 123).  However, both on appeal and later before the ALJ, Plaintiff made clear that she was also claiming disability due to depression and anxiety.  (Tr. 20, 143).  The ALJ considered such mental conditions and found Plaintiff's anxiety and depression to "have more than minimal effect on her ability to perform work-related activities and are therefore 'severe'" as defined in 20 C.F.R. §§ 404.1520(c) and 416.920(c).  (Tr. 10).

Unfortunately, the record is thin regarding independent expert review of Plaintiff's mental impairments. Unlike many cases, the record in this case does not include a Psychiatric Review Technique or a Mental RFC Form completed by a consulting psychologist or psychiatrist based upon a review of medical records. Thus, at the time of the ALJ hearing, the record as to Plaintiff's mental impairments consisted solely of treating physician medical records and two opinions of Dr. Sullivan, a consulting psychiatrist retained by Plaintiff's attorney. (See Exs. 8F, 11F and 12F). The ALJ did not arrange for a medical expert to appear at the ALJ hearing to review and opine on the medical record. Although it was not discussed at the hearing, the ALJ later arranged for a consultative examination of Plaintiff to be performed by a psychologist. (See Tr. 165-166). Dr. Turchetta evaluated Plaintiff on May 27, 2010 and issued a report. (Ex. 13F). Dr. Turchetta interviewed Plaintiff and reviewed a report from Dr. Sullivan. (Tr. 284). It is unclear why Dr. Turchetta was not provided with other available evidence such as the treating physician medical records or the hearing transcript. The failure to provide Dr. Turchetta with such information necessarily limited the comprehensiveness and reliability of his opinion. In fact, while Dr. Turchetta concluded that Plaintiff's GAF was 48 and her prognosis poor, he qualified his opinions by stating that "[t]he impressions described here are based solely on the claimant's description of her life history, a clinical interview and a report from Dr. James K. Sullivan" and observed that "[t]his information would best be integrated with other available evidence." (Tr. 284). Since the other available evidence was not presented to Dr. Turchetta and the ALJ did not reconvene a hearing with a medical expert, the ALJ was the one who ultimately did the integrating.

In doing so, the ALJ did not assign significant weight to Dr. Sullivan's opinions. (Tr. 13). In addition, the ALJ did not substantively evaluate Dr. Turchetta's report and did not indicate what

amount of weight, if any, he gave to Dr. Turchetta's report. Presumably, the ALJ arranged for Dr.

Turchetta's evaluation because he believed the record following the hearing was not sufficient at that

time to make a ruling. In other words, the ALJ presumably wanted Dr. Turchetta's evaluation to get

a second opinion in addition to those rendered by Dr. Sullivan (the Psychiatrist retained by Plaintiff)

and an expert review of the medical evidence. As previously noted, Dr. Turchetta did not review any

additional medical evidence and rendered an opinion fairly consistent with those of Dr. Sullivan but

subject to the qualification that it "would best be integrated with other available evidence." (Tr. 284).

Here, the only mental RFC assessment in the record was completed by Dr. Sullivan in 2008

(Tr. 199-200) and rejected by the ALJ. Thus, the ALJ independently reviewed the record and made

his own lay determination as to mental RFC. Although the ALJ explains why he discounted Dr.

Sullivan's opinions, he does not adequately explain what evidence supports his mental RFC

conclusions. See Gordils v. Sec'y HHS, 921 F.2d 327 (1st Cir. 1990) ("the ALJ is not qualified to

assess [RFC] based on a bare medical record). Based on this record, this is not a case where the

medical evidence shows "relatively little [mental] impairment" so the ALJ could "permissibly [ ]

render a commonsense judgment about functional capacity even without a physician's assessment."

Manso-Pizarro, 76 F.3d at 17. Both Dr. Sullivan and Dr. Turchetta opined that Plaintiff's GAF rating

was in the 40s which reflects a finding of serious mental health symptoms. This is also not a case

where the ALJ weighed competing opinions as to RFC, drew inferences from the record as a whole,

and "pieced together the relevant medical facts from the findings and opinions of multiple

physicians." Evangelista v. Sec'y HHS, 826 F.2d 136, 144 (1st Cir. 1987). Put simply, the record in

this case was not sufficiently developed to support the ALJ's mental RFC findings and remand for further review is warranted.[1]

## VI. CONCLUSION

For the reasons discussed herein, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 9) be DENIED and that Plaintiff's Motion for Reversal of the Disability Determination of the Commissioner of Social Security (Document No. 7) be GRANTED. Further, I recommend that Final Judgment enter in favor of Plaintiff remanding this case for further administrative proceedings consistent with this decision.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
November 10, 2011

---

[1] Plaintiff also takes issue, inter alia, with the ALJ's application of the Grids at Step 5 and the evidentiary basis for the ALJ's conclusion that Plaintiff's non-exertional limitations have "little or no effect on the occupational base of unskilled sedentary work." (Tr. 15). Since I conclude that Plaintiff's arguments regarding the ALJ's RFC assessment are valid and plainly warrant remand, there is no need to fully consider Plaintiff's alternative arguments. However, I do note that the ALJ does not cite an evidentiary basis for the above-quoted conclusion and, at the hearing, the ALJ did not elicit any testimony from the VE on this issue and only briefly questioned the VE regarding Plaintiff's past work history. (Tr. 33-35).